**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

AKRIL LIONKING ZULU,

                      Plaintiff,

        - v -                                 Civ. No. 9:14-CV-0870
                                                        (MAD/DJS)

WENDY M. SEYMOUR and JOHN D. GRANT,

                      Defendants.

**APPEARANCES:**                             **OF COUNSEL:**

AKRIL LIONKING ZULU
Plaintiff, *Pro Se*
96-A-4462
Clinton Correctional Facility
P.O. Box 2000
Dannemora, New York 12929

HON. ERIC T. SCHNEIDERMAN           RYAN W. HICKEY, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

    *Pro se* Plaintiff Akril LionKing Zulu brings this action, pursuant to 42 U.S.C. § 1983, asserting claims arising from when he was incarcerated at Upstate Correctional Facility ("Upstate") while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 11, Am. Compl. Plaintiff asserts an Eighth Amendment claim against Defendants Correction Officer ("C.O") Wendy Seymour and C.O. John Grant for allegedly tampering with his food. *Id.* Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 44,

Defs.' Mot. Summ. J. In their Motion, Defendants argue that: (1) Plaintiff cannot establish their personal involvement in the alleged constitutional violations; (2) there are no disputed issues of material fact precluding summary judgment on Plaintiff's Eighth Amendment claim; and (3) they are entitled to qualified immunity. *Id.* Plaintiff has opposed the Motion and Defendants have filed a Reply. Dkt. Nos. 57, Pl.'s Resp., & 59, Defs.' Reply. For the reasons that follow, the Court recommends that Defendants' Motion be **granted**.

## I. BACKGROUND[1]

On September 27, 2012, Plaintiff was confined in the Upper B gallery of Building 8 at Upstate. Defs.' SMF at ¶ 13. At Upstate, which is a special housing unit ("SHU") facility, meals are delivered to inmates in their cells three times per day. *Id.* at ¶ 2. The procedure for meal preparation and delivery at Upstate is as follows. First, all meals are prepared in the facility kitchen by civilian staff. *Id.* at ¶ 3. The kitchen staff portions the food onto trays and places a plastic lid on each tray, which are then placed into enclosed, insulated carts. *Id.* at ¶¶ 4-5. The plastic lids remain on the meal trays until they are delivered to the inmates in their cells. *Id.* at ¶ 11. Drinks are loaded onto separate carts. *Id.* at ¶ 6. Once the carts are prepared, inmate porters wheel them to each

---

[1] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* Plaintiff's Counter-Statement of Material Facts fails to properly respond to Defendants' Statement of Material Facts and is not supported by citations to the record. *See* Dkt. No. 57-1, Pl'.s Rule 7.1 Counter-Statement of Material Facts. Nonetheless, in deference to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record in order to determine the undisputed material facts. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules"). The Court will cite to the facts as set forth in Defendants' Rule 7.1 Statement of Material Facts only when properly supported by the record. Dkt. No. 44-1, Defs.' Rule 7.1. Statement of Material Facts ("Defs.' SMF"); *see also GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

housing block. *Id.* at ¶ 7. Each housing block has assigned correction officers who then distribute the meal trays to each cell. *Id.* at ¶ 8. The meal trays are not assigned to particular inmates or cell locations and are distributed at random. Dkt. No. 44-9, Decl. of Don Haug, dated May 6, 2016, at ¶ 15. The trays are inserted into a cell through a feed-up hatch in each cell door. *Id.* at ¶ 9. After the inmates have finished eating, the correction officers collect the food trays. Haug Decl. at ¶ 17.

On September 27, 2012, Defendants C.O. Grant and C.O. Seymour were assigned to the Upper B gallery during the distribution of dinner meal trays. Defs.' SMF at ¶ 15. C.O. Grant distributed the meal trays and C.O. Seymour followed behind him with the drink cart. *Id.* at ¶¶ 16 & 19. Plaintiff received a meal tray from C.O. Grant. Dkt. No. 44-6, Decl. of John Grant, dated May 9, 2016, at ¶ 22. C.O. Grant would check each tray as he handed them out and did not notice anything unusual about Plaintiff's tray. *Id.* at ¶ 23. The plastic lid was still attached to Plaintiff's meal tray when he received it. Defs.' SMF at ¶ 20.

Upon receiving his meal, which was chicken and barbecue sauce on rice, Plaintiff began to eat. Dkt. No. 44-4, Decl. of Ryan W. Hickey, dated May 11, 2016, Ex. A, Dep. of Arkil LionKing Zulu, dated Dec. 16, 2015 ("Pl.'s Dep.") at pp. 23 & 25. After taking his second scoop of rice, Plaintiff noticed something rubbery in his mouth, which he spit out onto his tray to examine. *Id.* at pp. 28-29. Plaintiff then saw that the rubbery object was a dead mouse that was fully intact. *Id.* at pp. 29-30. Plaintiff began yelling and kicking his cell door in order to get C.O. Grant and C.O. Seymour's attention. *Id.* at p. 31.

The Defendants returned to Plaintiff's cell door and he explained what had happened. *Id.* The area sergeant arrived and directed C.O. Seymour to take photographs of the dead mouse, which she did using a digital camera. Dkt. No. 44-5, Decl. of Wendy Seymour, dated May 11, 2016, at ¶¶

30-31. These photographs were not preserved. *See* Pl.'s Dep. at p. 49. C.O. Seymour states that after taking the photographs she returned the digital camera to the sergeant and had no further involvement with the camera or the photographs. Seymour Decl. at ¶ 31.

Nurse Denise Reome was also summoned to assess Plaintiff's request for medical attention. Defs.' SMF at ¶ 26. Plaintiff complained that he had chewed on the dead mouse, but had not consumed any part of it. *Id.* at ¶ 27. Plaintiff stated that he was nauseous and had vomited a clear yellow liquid. Pl.'s Dep. at pp. 37-38. Nurse Reome contacted the on-duty physician who advised her that Plaintiff's complaints did not require treatment at that time. *Id.* at p. 40. Plaintiff states that his stomach continued to bother him the following day and that he again threw up a clear liquid. *Id.* at p. 42. He went to sick call, where the examining nurse determined that he did not require any medical attention. *See* Dkt. No. 44-7, Decl. of Denise Reome, dated May 5, 2016, at ¶ 18.

Although Plaintiff did not witness C.O. Grant or C.O. Seymour tampering with his meal tray, he believes they placed the dead mouse in his food. Pl.'s Dep. at pp. 47-48. Plaintiff states that they were "smiling" when he told them about the dead mouse, which led him to believe "that there [wa]s some type of guilt." *Id.* at p. 48. Plaintiff admits that he had never had any problems with C.O. Grant or C.O. Seymour before this incident. *Id.* at pp. 17-18. Yet Plaintiff believes they might have targeted him for harassment on account of the numerous grievances and complaints he had filed. *See id.* at pp. 50-51.

## II. LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to

interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

As discussed below, the Court finds that Plaintiff has failed to establish the personal involvement of Defendants C.O. Grant or C.O. Seymour in the alleged Eighth Amendment violation and recommends that this action be **dismissed** on that basis. The Court therefore does not reach Defendants' arguments that they are entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claim or that they are entitled to qualified immunity.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v.*

*Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

In this case, Plaintiff's allegation that Defendants C.O. Grant and C.O. Seymour— or anyone, for that matter— deliberately tampered with his meal tray is entirely speculative. It is undisputed that meals were prepared in the facility kitchen; portioned onto meal trays and covered with a plastic lid; transported by inmate porters to each housing block; and distributed by correction officers to inmates in their cells. Plaintiff received his meal on September 27, 2012, with the plastic cover still on. Plaintiff admits that he never observed anyone, much less either of the Defendants, tamper with his meal. *See* Pl.'s Dep. at pp. 47-48. Instead, Plaintiff assumes that the Defendants must have tampered with his meal because they had access to it. *Id.* at p. 47. Plaintiff further asserts that the Defendants were "smiling" when he told them what happened, which led him to believe that "there [wa]s some type of guilt, something that they know." *Id.* at p. 48. As a possible motivation, Plaintiff suggests that Defendants were aware of the numerous grievances he had filed against staff at Upstate. *Id.* at pp. 51-52.

Plaintiff's conclusory allegations fail to establish the personal involvement of either Defendant. Simply put, Plaintiff assumes someone must have deliberately put the dead mouse in his food, and speculates that Defendants must have been involved because they had the opportunity. But there is no basis upon which a rational juror could conclude that either of those premises were true. It does not follow from the mere fact that a dead mouse was in Plaintiff's food that someone deliberately put it there. And there is no evidence that Defendants either tampered with or were aware that Plaintiff's meal had been tampered with. *See Thaxton v. Simmons*, 2013 WL 4806457,

at *11-12 (N.D.N.Y. Sept. 9, 2013) (finding allegation that the defendant "smirked" upon hearing about a piece of metal in inmate's food insufficient to establish the personal involvement of that defendant).

Plaintiff mainly opposes Defendants' Motion on the ground that Defendants' failure to preserve the photographs of the dead mouse and videotape from the camera outside his cell warrants spoliation sanctions. *See* Pl.'s Resp. "Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "The spoliation of evidence germane 'to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.'" *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

"In borderline cases, an inference of spoliation, in combination with 'some (not insubstantial) evidence' for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment." *Id.* (quoting *Kornisch v. United States*, 150 F.3d at 128). But "the destruction of evidence, standing alone, is not enough to allow a party who has produced no evidence—or utterly inadequate evidence—in support of a given claim to survive summary judgment on that claim." *Kronisch v. United States*, 150 F.3d at 128. Here, the allegedly spoliated evidence is insufficient to enable Plaintiff to survive summary judgment because it has no bearing on the issue of Defendants' personal involvement in the alleged constitutional violation. It is undisputed that C.O. Seymour took photographs of the dead mouse; however, the fact that she took pictures of the dead mouse has

no relevance to the issue of whether she was involved in placing the mouse in Plaintiff's food. As to the video from the camera outside his cell, Plaintiff claims that it would show C.O. Seymour taking the photographs of the dead mouse and C.O. Seymour and C.O. Grant "smiling and laughing." Pl.'s Resp. at p. 6. Again, the fact that C.O. Seymour took photographs of the dead mouse has no bearing on whether she was involved in placing the dead mouse in Plaintiff's food. Plaintiff's claim that the Defendants were smiling was considered by the Court above and is insufficient to establish their personal involvement in the alleged constitutional violation.

Accordingly, the Court recommends that summary judgment be **granted** on the ground that Plaintiff has failed to establish the personal involvement of the Defendants.

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 44) be **GRANTED** and this action **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[2] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

---

[2] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: March 3, 2017
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge